IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 2, 2022 Session

## TONI BARRIOS ET AL. v. CHARLIE SIMPKINS ET AL.

**Appeal from the Chancery Court for Cheatham County**
**No. 16245        Kelvin D. Jones, Judge[1]**

---

### No. M2021-01347-COA-R3-CV

---

In this boundary line dispute in which the plaintiffs sought declaratory judgment concerning the boundary between the parties' adjoining parcels of real property, the trial court, following a bench trial, entered declaratory judgment adopting the boundary line of a survey presented by the plaintiffs over other competing surveys. The court, however, did not adopt a boundary line alternatively propounded by the plaintiffs claiming adverse possession of a disputed portion of land. The court dismissed all other claims with prejudice, including, *inter alia*, competing trespass claims and the plaintiffs' claims for intentional infliction of emotional distress and assault. The plaintiffs have appealed, raising issues regarding the trial court's denial of their adverse possession and trespass claims and requests for damages and injunctive relief. We affirm the trial court's dismissal of the plaintiffs' adverse possession claim and the court's declaration of the parties' boundary line. However, determining that the trial court erred in applying an intent to trespass as a necessary element of civil trespass, we vacate the trial court's dismissal of the plaintiffs' trespass claim. We remand for the trial court to (1) apply the proper intent standard for trespass to determine, with the boundary line as declared by the trial court, whether the defendants trespassed on the plaintiffs' property; (2) if trespass occurred, determine the type(s) of damages to be awarded; and (3) if trespass occurred, set the amount of damages to be awarded with discretionary costs as appropriate. Discerning that the trial court made no findings regarding the plaintiffs' request for injunctive relief, we also remand for consideration of that request based on relevant factors and entry of an order granting or denying injunctive relief with appropriate findings of fact. We affirm the trial court's judgment in all other respects. We deem the plaintiffs' and the defendants' respective requests for attorney's fees on appeal to be waived.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Vacated in Part; Case Remanded**

---

[1] Sitting by interchange.

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Irene R. Haude, Nashville, Tennessee, and Rhonda (Crabtree) Meyers, Ashland City, Tennessee, for the appellants, Toni Barrios and Louis Barrios.

B. Nathan Hunt and Macayla F. Heath, Clarksville, Tennessee, for the appellees, Charlie Simpkins and Jackie Simpkins.

**OPINION**

I. Factual and Procedural Background

This is the second appeal to this Court in the instant action from the Cheatham County Chancery Court ("trial court"). *See Barrios v. Simpkins*, No. M2018-00122-COA-R9-CV, 2019 WL 3406366 (Tenn. Ct. App. July 29, 2019) ("*Barrios I*"). In *Barrios I*, a decision entered upon interlocutory appeal, this Court reversed the trial court's grant of summary judgment in favor of the defendants, Charlie Simpkins and Jackie Simpkins (collectively, "Defendants"), which had been granted against the plaintiffs, Toni Barrios and Louis Barrios (collectively, "Plaintiffs"), on the basis of *res judicata*. *Id.* at *1. Plaintiffs own real property located at 1038 Fox Hill Road in Ashland City, Tennessee, identified as Lots 14 and 15 within the Fox Hill Subdivision plat ("the Barrios Property"), and Defendants own adjoining real property known as Lots 12 and 13 on Fox Hill Road ("the Simpkins Property"). The Barrios Property is improved by a home built in approximately 1998, two years prior to Plaintiffs' purchase of the property. Shortly after purchasing their property in 2000, Plaintiffs erected a fence around a portion of the back of the property. The Simpkins Property remained undeveloped at the time of trial.

Plaintiffs previously had been named as defendants in a lawsuit filed by Defendants' predecessor in title, Mary Louise Nicholson. *Id.* As pertinent to this action, the *Barrios I* Court described the factual and procedural background of the prior lawsuit as follows:

> [Ms. Nicholson] alleged that a storage shed that Appellants [the Barrioses] were constructing protruded beyond their property line and onto her property. The prior case was filed on July 5, 2011, and, in paragraph six of her complaint, Ms. Nicholson referenced an attached property survey completed by Jeff Chandler of Chandler Surveying ("the Chandler survey"), which showed that a corner of the storage shed crossed the

2

property line at issue. In the corresponding paragraph of their answer to Ms. Nicholson's complaint, Appellants denied the allegations regarding the Chandler survey.

During the pending litigation of the prior case, Appellants removed the structure that Ms. Nicholson alleged was encroaching onto her property.

*Id.* Following the removal of the structure, Ms. Nicholson and Plaintiffs entered into an agreed order, *inter alia*, enjoining Plaintiffs from placing any structure on Ms. Nicholson's property. *Id.*

The *Barrios I* Court further explained this action's history preceding the interlocutory appeal:

Following the dismissal of the prior case, the property that had belonged to Ms. Nicholson was purchased by Charlie Simpkins and Jackie Simpkins [Defendants]. During the time that [Defendants] were in possession of the property that formerly belonged to Ms. Nicholson, they had multiple surveys conducted. According to [Plaintiffs], after each of these surveys, [Defendants] moved the property line further onto land claimed by [Plaintiffs]. Additionally, [Plaintiffs] assert that a surveyor placed metal stakes on their property, signifying the changes shown in the new surveys. Further, [Defendants] cut down trees [Plaintiffs] claim to be their property. On July 31, 2014, [Plaintiffs] filed the present case against [Defendants] alleging trespass and seeking both compensatory and punitive damages. They also request a declaration by the trial court establishing the actual property line between the parties.

Following discovery, [Defendants] moved for summary judgment in part on the theory that the agreed order entered into during the prior case bars [Plaintiffs'] claims in the current case because the boundary line has been established, as a matter of *res judicata*, by the dismissal of the prior case.

*Id.* Additionally, prior to filing their motion for summary judgment, Defendants had filed an "Answer and Cross Claim," asserting the defense of *res judicata* and also asserting a counterclaim against Plaintiffs of trespass and one against Ms. Barrios specifically for malicious prosecution regarding a criminal warrant for assault that she had previously sought against Mr. Simpkins.

The *Barrios I* Court further explained the summary judgment proceedings:

3

The trial court agreed with [Defendants'] argument and granted their motion for summary judgment, finding that the boundary line between the two properties was established as a matter of *res judicata* by the dismissal of the prior lawsuit. [Plaintiffs] moved to alter or amend the judgment pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure. The trial court granted this motion in part (noting that "[U]nder the doctrine of *res judicata* the boundary line between Plaintiffs' and Defendants' properties is that which was on a survey attached to the complaint filed in a case between the Barrios' and the Simpkins' predecessor in interest" and "as a matter of law, the boundary line is established for purposes of this litigation and does not need to be litigated in this case.") and denied it in part. Pursuant to Rule 9, [Plaintiffs] sought an interlocutory appeal on the *res judicata* portion of the trial court's order.

*Id.* In reversing the trial court's summary judgment order, this Court determined that Defendants had "failed to establish the defense of *res judicata* in their attempt to show that the property line was established in the prior case" because the agreed order "did not state that [Plaintiffs] had agreed to the property line as established in the Chandler survey." *Id.* at *3. This Court remanded the case "for such further proceedings as may be necessary to establish the proper boundary between the parties' properties." *Id.*

The trial court judge in *Barrios I* had been Judge Philip E. Smith, sitting by interchange upon an April 2015 order noting the *sua sponte* recusal of all 23rd Judicial District judges at that time. On remand, Judge Smith entered an order of recusal on September 30, 2019. The Tennessee Supreme Court Chief Justice then entered an order on October 18, 2019, designating Judge Kelvin D. Jones to hear the case by interchange in Davidson County.

Following a status conference, the trial court entered an order on May 19, 2021, denying a motion that Plaintiffs had filed to amend their complaint. The court stated in its May 2021 order that Plaintiffs would "be allowed to Amend the Complaint to conform to proof as submitted at trial at the end of evidence as allowed by the Tennessee Rules of Civil Procedure." Also in the May 2021 order, the trial court, *inter alia*, denied a motion filed by Plaintiffs to "maintain the disputed property solely" and directed that "neither party shall go upon the disputed property for any reason pending a final hearing in this matter."

We note that Plaintiffs' claims for assault and intentional infliction of emotional distress were not included in their original complaint and that the trial court's references to these claims in its final order were to Plaintiffs' motion to amend their complaint.

4

Although no motion to amend the complaint or order granting a motion to amend is in the appellate record, the trial court's July 2017 summary judgment order, appealed in *Barrios I*, includes procedural history stating that prior to the summary judgment hearing, Plaintiffs had "amended their *Complaint* further alleging that Defendant, Mr. Simpkins, assaulted Plaintiff, Toni Barrios, with a lawn mower, added a claim for intentional infliction of emotional distress, and increased their request of punitive damages from $100,000.00 to $250,000.00." The record is unclear as to whether the trial court ever entered an order granting Plaintiffs' motion to amend the complaint. However, given that Defendants did not object at trial, we determine that Plaintiffs' claims for assault and intentional infliction of emotional distress were tried by implied consent. *See* Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

Regarding the alleged assault, Ms. Barrios testified at trial that on August 30, 2014, she had driven her vehicle onto her driveway when she observed Mr. Simpkins on his riding lawnmower on what she considered to be the Barrios Property. According to Ms. Barrios, she exited her vehicle, stood on the passenger side, and began snapping photographs of Mr. Simpkins. Ms. Barrios stated that Mr. Simpkins "came inside [Plaintiffs'] fence," stopped, "looked at [Ms. Barrios]," "turned the blades off on his lawn mower, and just punched the gas and came right at [Ms. Barrios]," running over her foot. Plaintiffs presented photographs that Ms. Barrios stated were taken as she held onto her camera while the incident occurred. Plaintiffs also presented an invoice from Ms. Barrios's visit to an emergency room following the incident and a photograph of Ms. Barrios's feet. Ms. Barrios reported that one foot was "red and swollen" but that no bones were broken.

During trial, Mr. Simpkins denied having run over Ms. Barrios's foot with his lawnmower. It is undisputed that Ms. Barrios had called the police on the day of the incident and subsequently requested a warrant for criminal assault. Ms. Barrios testified before a grand jury, which ultimately returned a finding of "no true bill," resulting in no criminal charge against Mr. Simpkins. As noted above, Defendants subsequently alleged malicious prosecution against Ms. Barrios as a counterclaim in the instant action; however, they voluntarily dismissed this claim at trial.

The trial court conducted a bench trial over the course of two days on October 4 and 5, 2021. Defendants and Ms. Barrios all testified at trial. Mr. Barrios did not appear for trial. Other witnesses included Jeff Chandler, who had completed the "Chandler Survey" noted in *Barrios I*, and two other licensed land surveyors: Billy Ray Suiter and Brian McCain. Two subdivision residents and Plaintiffs' gardener also testified.

5

At the close of Plaintiffs' proof, they moved "to amend the pleadings to reflect the testimony," referencing the trial court's May 2021 order in which the court denied Plaintiffs' motion to amend the complaint but directed that a motion "to conform to proof as submitted at trial" would be allowed. In response to a question from the trial court regarding whether Plaintiffs were amending their complaint to remove any specific claim, Plaintiffs' counsel answered that they were not and that the prayers for relief were "still the same substance." Defendants' counsel asked that any denials they had previously made be preserved, and Plaintiffs did not object to this request. Defendants did not object further.

On October 15, 2021, the trial court entered its "Trial Order," adopting Mr. Suiter's survey and declaring the boundary line between the Barrios Property and the Simpkins Property to be as described in that survey. The court dismissed all other claims with prejudice, including Plaintiffs' adverse possession claim concerning what the court found to be approximately an eight-foot portion of boundary between the two properties that Plaintiffs contended had been initially shown to them in 2000 as part of their property.[2] The court expressly found "each witness to be credible in their testimony."

In adopting Mr. Suiter's survey and the boundary line described therein, the trial court stated:

> The first issue before this Court is where the boundary line between the Barrios Property and the Simpkins Property lies. There have been two competing boundary lines asserted by Plaintiffs and another boundary line asserted by Defendants. Plaintiffs claim that they have acquired a portion of the Simpkins Property by adverse possession. If this Court does not determine that Plaintiffs have adversely possessed the disputed property, Plaintiffs ask this Court to adopt the survey created by Billy Ray Suiter. Defendants ask this Court to adopt the survey created by Jeff Chandler.
>
> In 2009, Jeff Chandler of Chandler Surveying surveyed portions of the Fox Hill Subdivision including the Simpkins Property. The Chandler Survey included parcels 11-14 of the Fox Hill Subdivision including the Simpkins Property and a portion of the Barrios Property based upon the [metes] and bounds identified in the property deed. The Chandler Survey did not include the fence on the Barrios Property.

---

[2] Plaintiffs did not specifically plead adverse possession in their complaint. However, it is clear from the trial transcript, including Defendants' counsel's opening statement, that Defendants had notice of Plaintiffs' adverse possession claim. *See* Tenn. R. Civ. P. 15.02. Moreover, Defendants have not raised an issue on appeal concerning whether Plaintiffs pled their adverse possession claim before the trial court.

In 2011, Brian McCain of Southern Precision Land Surveying, Inc. prepared a survey of a portion of the Fox Hill Subdivision including the Barrios Property and portions of the Simpkins Property at the request of Plaintiffs. At trial, Ms. Barrios testified that Mr. McCain did not complete the survey in 2011 as stated because the survey equipment malfunctioned. When Mr. McCain did not complete the survey in the time prescribed, Plaintiffs did not pay Mr. McCain. Ms. Barrios testified that Mr. McCain told her he would just make his survey match the Chandler Survey. Mr. McCain testified that he did not recall making the statement that he would just match the Chandler Survey. The McCain Survey agreed with the Chandler Survey and put the boundary line in the same position.

In 2015, Billy Ray Suiter of Suiter Surveying and Land Planning, Inc. performed a survey of Fox Hill Road in the Fox Hill Subdivision. The Suiter Survey is the only survey that took the original plat and determined the boundaries of the Barrios Property and Simpkins Property in relation to the whole Fox Hill Subdivision. In preparing his survey, Mr. Suiter determined that there was a discrepancy on the original plat between the actual measured distances of the western most boundary of the properties in the Fox Hill Subdivision. In adding up the total distance of the western most boundary, Mr. Suiter found the total to be 1027.00 feet. In the original plat, the total stated distance of the western most boundary was 1063.00 feet. This 36 foot discrepancy accounts for the differences between the Suiter, McCain, and [Chandler] Surveys.

To resolve this boundary dispute "resort is to be made first to the natural objects or landmarks, because of their permanent character. Next, the artificial monuments or marks. Then, the boundary lines of adjacent land owners. And then, the courses and distances." [*Wood v. Starko*, 197 S.W.3d 255, 258 (Tenn. Ct. App. 2006).]

There are no natural objects or landmarks to be used as markers in this case. The Court then looks to artificial monuments or marks. In the case at hand, Fox Hill Road serves as one artificial mark. Both Messrs. Chandler and Suiter were able to identify certain iron pins that had been laid by previous surveyors. Both Messrs. Chandler and Suiter identified the iron pin between the Barrios Property and the Simpkins Property. Both the Chandler and Suiter Surveys suggest that the pin located closest to Fox Hill Road sets the north eastern corner of the Barrios Property and the south eastern corner of the Simpkins Property. The iron pins placed on the western boundaries of the properties along Fox Hill Road did not match the

7

[metes] and bounds stated in the original plat. This discrepancy is accounted for by the 36 foot difference between the actual measurements of the properties and the stated measurement on the original plat.

This Court adopts the survey of Mr. Suiter as the correct survey of this portion of the Fox Hill Subdivision. The Court finds this survey to be the most accurate. When taking the [metes] and bounds of the Chandler and McCain Surveys in conjunction with the rest of the Fox Hill Subdivision, it does not line up with the surrounding properties and Fox Hill Road. The 36 foot difference between the stated western boundary and the actual western boundary creates this discrepancy. If this Court were to adopt the Chandler and McCain Surveys, the properties would not be in line with the rest of the neighborhood or Fox Hill Road. Therefore, taken as a whole, this Court adopts the Suiter Survey to set the boundaries between the Barrios Property and Simpkins Property.

(Internal citations to record omitted.)

As to adverse possession, citing *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 376 (Tenn. 2007), the trial court distinguished between statutory adverse possession, requiring that the land be adversely possessed for at least seven years, and common law adverse possession, requiring that the land be adversely possessed for at least twenty years. The trial court found that Plaintiffs had presented no proof supporting a claim of statutory adverse possession and further found that because Plaintiffs had filed the instant lawsuit only fourteen years after purchasing the Barrios Property, they could not prove common law adverse possession.

In dismissing Plaintiffs' claim that Mr. Simpkins had assaulted her, the trial court found that the evidence presented at trial was conflicting, noting that "Ms. Barrios testified that Mr. Simpkins ran over her foot with his riding lawn mower" but that "Mr. Simpkins testified that he did not run over Ms. Barrios' foot with the lawn mower." The court also found that the photographic exhibits relied upon by Plaintiffs to show the alleged assault did "not show Mr. Simpkins running over Ms. Barrios' foot with the lawn mower." The court therefore found that "Ms. Barrios has failed to prove by a preponderance of the evidence that Mr. Simpkins assaulted Ms. Barrios."

Concerning Plaintiffs' claim for intentional infliction of emotional distress, the trial court concluded:

Mr. Barrios did not appear at trial to testify regarding any mental anguish he suffered as a result of the actions of the Defendants. Therefore,

Mr. Barrios' claims for intentional infliction of emotional distress are dismissed with prejudice for failure to prove by a preponderance of the evidence that the Defendants caused him severe mental anguish.

As stated in Section IV, this Court has determined that neither party trespassed onto the property of the other. As stated in Section V, this Court has determined that Ms. Barrios has failed to prove her allegations of assault by a preponderance of the evidence. As these claims are the basis of Ms. Barrios' claims for intentional infliction of emotional distress, her claim must fail because Ms. Barrios has not proven by a preponderance of the evidence that Defendants' conduct was outrageous.

The trial court also dismissed Defendants' claim for malicious prosecution upon noting that Defendants had abandoned the claim at trial. Plaintiffs timely appealed.

## II. Issues Presented

Plaintiffs present four issues on appeal, which we have reordered and restated as follows:[3]

1.  Whether the trial court erred by declining to declare that the boundary line was as Plaintiffs thought it to be when they purchased their property.

2.  Whether the trial court erred by dismissing Plaintiffs' trespass claim.

3.  Whether the trial court erred by declining to issue injunctive relief or award to Plaintiffs at least nominal damages.

4.  Whether Plaintiffs are entitled to an award of attorney's fees on appeal.

---

[3] In the concluding paragraph of their principal brief on appeal, Plaintiffs state: "The dismissal of the intentional infliction of emotional distress claims and assault claims also should be reversed and damages awarded." However, Plaintiffs have not raised an issue in their statement of the issues regarding either of these claims. We therefore deem any issue concerning Plaintiffs' claims for intentional infliction of emotional distress and assault to have been waived on appeal. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *Ethridge v. Estate of Ethridge*, 427 S.W.3d 389, 395 (Tenn. Ct. App. 2013) ("Issues not raised in the statement of the issues may be considered waived."); *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) ("We may consider an issue waived where it is argued in the brief but not designated as an issue.").

III. Standard of Review[4]

This Court reviews the factual findings of the trial court *de novo* with a presumption of correctness and will not overturn them unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Morrison v. Allen*, 338 S.W.3d 417, 425-26 (Tenn. 2011). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). As to damages, although "[d]eterminations concerning the amount of damages are factually driven," "the choice of the proper measure of damages is a question of law." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 228 (Tenn. Ct. App. 2006) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998)).

Regarding review of a boundary line dispute, this Court has previously explained:

"In resolving a boundary line dispute, it is the role of the trier of fact to evaluate all the evidence and assess the credibility of the witnesses." *Mix v. Miller*, 27 S.W.3d 508, 514 (Tenn. Ct. App. 1999) (citing *Norman v. Hoyt*, 667 S.W.2d 88, 91 (Tenn. Ct. App. 1983)). The judgment of the trial court should be affirmed, absent errors of law, unless the preponderance of the evidence is against those findings. *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161 (Tenn. Ct. App. Mar. 31, 2008). Due to the fact-intensive nature of boundary line disputes, the trial court is best suited to assess the credibility of the witnesses and its credibility determinations are binding on this court unless the evidence preponderates against them. *Id.* at \*34. When the trial court makes a determination accepting one surveyor's findings over that of another, that same deference requires this court to accept the trial court's findings. *Id.*

The following rule has been adopted in Tennessee:

The construction of deed and other instruments and documents and their legal effect as to boundaries is a question of law. What boundaries the grant or deed refers to is a question of law; where those boundaries are on the face of the earth is a question of fact. If, therefore, the evidence

---

[4] Plaintiffs have also listed "Standard of Review" in their statement of the issues. For ease of organization, we have set forth the applicable standard of review prior to beginning our analysis of the substantive issues.

> concerning the location of the true boundary line between adjacent landowners is conflicting, that issue is one of fact unless the legal construction of the deed or grant is such that the boundary is determined as a matter of law.
>
> 12 Am. Jur. 2d *Boundaries* § 121 (1997) (footnotes omitted). We therefore review the trial court's finding as to the true location of the [parties'] boundary line as a finding of fact that is entitled to the presumption of correctness. Tenn. R. App. P. 13(d). Thus, we will not disturb the trial court's judgment unless the evidence preponderates against it. *Id.*

*Hong v. Foust*, No. E2011-00138-COA-R3-CV, 2012 WL 388448, at *5 (Tenn. Ct. App. Feb. 8, 2012); *see Conder v. Salyers*, 421 S.W.3d 589, 592 (Tenn. Ct. App. 2013).

This Court reviews a trial court's decision to grant or deny injunctive relief pursuant to an abuse of discretion standard. *See Gentry v. McCain*, 329 S.W.3d 786, 793 (Tenn. Ct. App. 2010). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010) (internal citations omitted).

## IV. Boundary Line and Adverse Possession Claim

The trial court adopted the survey completed by Plaintiffs' expert witness, Mr. Suiter ("the Suiter Survey"). As the trial court noted, Plaintiffs had asserted "two competing boundary lines," one according to the Suiter Survey and one incorporating an additional portion of land ("Disputed Portion") that Plaintiffs claimed they believed had been theirs when they purchased their property. Plaintiffs thereby claimed an ownership interest in the Disputed Portion through adverse possession. Relying on Tennessee Code Annotated § 28-2-105, Plaintiffs contend on appeal that the trial court erred by dismissing Plaintiffs' adverse possession claim and declining to declare the boundary line as Plaintiffs thought it to be at the time of purchase.

Although Defendants argued at trial that the boundary line should be declared according to the survey presented by their expert witness, Mr. Chandler ("the Chandler Survey"), Defendants have not raised an issue on appeal concerning the trial court's adoption of the Suiter Survey over the Chandler Survey.[5] Therefore, the sole issue before

---

[5] As the trial court noted, although Plaintiffs disputed whether Mr. McCain had actually completed a survey, the written survey Mr. McCain had prepared and subsequently reviewed during his trial testimony was essentially in agreement with the Chandler Survey.

this Court regarding the trial court's declaration of the boundary line is Plaintiffs' issue involving their statutory adverse possession claim. Upon careful review of the record and applicable authorities, we conclude that Plaintiffs failed to demonstrate the threshold requirement of thirty years' color of title to prevail on their adverse possession claim under Tennessee Code Annotated § 28-2-105.

Acquisition of property by adverse possession may operate as a bar to recovery of the property by the title holder, and it may also operate to vest the adverse possessor with title. *See Cumulus*, 226 S.W.3d at 375; *Wilson v. Price*, 195 S.W.3d 661, 666-67 (Tenn. Ct. App. 2005). Our Supreme Court has explained regarding the statutory forms of adverse possession in pertinent part:

> [L]imitations of real property actions, i.e., the statutory forms of adverse possession, are found in Tennessee Code Annotated sections 28-2-101 through 103. Initially, land granted by the state, for example, requires only a period of seven years' adverse possession under a recorded assurance or color of title, terms which are used interchangeably. Tenn. Code Ann. § 28-2-101 (2000); *see, e.g., Slatton v. Tenn. Coal, Iron, & R.R. Co.,* 109 Tenn. 415, 75 S.W. 926, 927 (Tenn. 1902). Another provision, Tennessee Code Annotated section 28-2-105, does not require any proof of a state land grant but does prescribe assurance of title for thirty years and a minimum of seven years of adverse possession. The limitations on actions statutes, described in Tennessee Code Annotated sections 28-2-102 and 103, are defensive only, barring only the remedy. *Kittel v. Steger,* 121 Tenn. 400, 117 S.W. 500, 503 (Tenn. 1909). These rights may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner. *Savely v. Bridges,* 57 Tenn. App. 372, 418 S.W.2d 472, 479 (Tenn. Ct. App. 1967). Tennessee Code Annotated section 28-2-102 provides a defense when there is assurance of title and seven years possession; this statute serves as protection as to the entire boundary as described. Section 28-2-103, which does not involve color of title, protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession. *Shearer v. Vandergriff,* 661 S.W.2d 680, 682 (Tenn. 1983).

*Cumulus*, 226 S.W.3d at 376 (footnotes omitted) (emphasis added).

In contrast, our Supreme Court has explained regarding common law adverse possession:

In our state, common law adverse possession rests upon the proposition "that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed." Color (or assurance) of title is not required. In order to establish adverse possession under this theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. Adverse possession is, of course, a question of fact. The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing. The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor.

*Cumulus*, 226 S.W.3d at 376-77 (internal citations omitted).

The statutory form of adverse possession relied upon by Plaintiffs, Tennessee Code Annotated § 28-2-105 (2017), provides:

Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom such person claims having been in adverse possession of same for seven (7) years, where the real estate is held and claimed by such person or those through whom such person claims by a conveyance, devise, grant, a decree of a court of record, or other assurance of title purporting to convey an estate in fee, and such conveyance, devise, grant, or other assurance of title, has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period of thirty (30) years or more, is vested with an absolute and indefeasible title to such real estate or interest therein.

As this Court has explained in pertinent part:

Tennessee Code Annotated § 28-2-105 provides a mechanism for quieting title to real property <u>if the claim is based on a conveyance or assurance of title of record for at least 30 years and if the property has been adversely possessed by the claimant or his predecessors in title for at least 7 years.</u>

* * *

> If the claimant can establish both of these essential elements, the statute "has the effect of vesting absolutely the legal title to the land in the person holding adverse possession thereof during the period of limitation fixed by the statute (seven years) and under assurance of title registered for a period of thirty years." *Savely v. Bridges*, 57 Tenn. App. 372, 418 S.W.2d 472, 478 (Tenn. Ct. App. 1967).

*Butler v. Still*, No. M2009-01729-COA-R3-CV, 2010 WL 3328010, at *4 (Tenn. Ct. App. Aug. 24, 2010) (emphasis added).

In its final order, the trial court described the Disputed Portion as "a roughly 8 foot portion of boundary between the Barrios Property and the Simpkins Property." As the trial court further found:

> At the time Plaintiffs purchased the Barrios Property in 2000, Plaintiffs were shown a marked iron pin in the north eastern corner of the property and a flag in the north western corner of the property. Both Messrs. Chandler and Suiter discovered the iron pin referenced by Ms. Barrios at trial. Mr. Suiter also discovered an iron pin in the alleged north western corner of the Barrios Property.

(Internal citation to record omitted.)

Mr. Suiter and Mr. Chandler each respectively testified that the front corners on their surveys matched each other. Mr. Suiter explained that Ms. Barrios had shown him another pin "on the front that was about eight foot over" from the pin identified by both Mr. Suiter and Mr. Chandler as the front corner. According to Mr. Suiter, although Ms. Barrios had stated that there was an additional pin in the back of the Barrios Property as well, she was not able to show it to him because it was "so hard to access" due to the terrain. Mr. Suiter, who was the only surveyor to find the pin in the front relied upon by Plaintiffs in claiming the Disputed Portion, opined that it was "an extra pin." Mr. Suiter noted that the "extra pin" was unmarked by any surveyor although he stated that prior to approximately fifteen years before trial, surveyors were not necessarily required to "put a cap with a license number on top of the pin."

When questioned regarding the difference in measurement if the Barrios Property as represented in the Suiter Survey were to have the Disputed Portion added, Mr. Suiter responded: "At the road it's about eight feet. Back in the back it's not – I think it goes down to nothing, I believe, in the back." Mr. Suiter confirmed that the two

measurements, his survey and Plaintiffs' requested one, came together in the back of the property and that the widest point of difference was the eight feet at the front. As the trial court noted, Plaintiffs presented photographs with three sets of colored flags marking the various boundaries at issue: white for the boundary according to the Chandler Survey; orange for the boundary according to the Suiter Survey; and finally, blue flags, which Ms. Barrios had requested that Mr. Suiter set out, to include the Disputed Portion claimed by Plaintiffs through adverse possession. Mr. Suiter confirmed during his testimony that the orange flags marked the boundary as he had found it. No surveyor found the Disputed Portion to be included in the Barrios Property.

In support of their argument that they had adversely possessed the Disputed Portion, Plaintiffs state regarding the boundary marked by the blue flags that they "had used that line as their point of reference and had used that property until this litigation commenced in 2014," which was approximately fourteen years after Plaintiffs had purchased their property.[6] Plaintiffs do not dispute the trial court's finding that they could not prove the requisite twenty years required for a finding of common law adverse possession. *See Cumulus*, 226 S.W.3d at 376. Instead, Plaintiffs argue that the trial court "applied an incorrect legal standard" because the court should have applied the seven-year period required for adverse possession under Tennessee Code Annotated § 28-2-105. In response, Defendants contend that Plaintiffs proved no facts demonstrating the type of exclusive, actual, adverse, continuous, and open use of the Disputed Portion that would be necessary for a finding of adverse possession. *See Cumulus*, 226 S.W.3d at 376. The parties have not addressed the first essential element for a finding of statutory adverse possession under § 28-2-105, namely, assurance of title for a minimum of thirty years.

Citing *Cumulus*, the trial court stated in its final order that "[t]he statutory bases for adverse possession are either a grant of land from the state or as a defense in suit by the rightful owner." The trial court then found that Plaintiffs had "not shown any facts to support a claim of statutory adverse possession." The trial court did not directly address Tennessee Code Annotated § 28-2-105, which is not required to be a defense and "does not require any proof of a state land grant but does prescribe assurance of title for thirty years and a minimum of seven years of adverse possession." *See Cumulus*, 226 S.W.3d at 376. It is unclear whether the trial court's finding that Plaintiffs had not demonstrated facts necessary for statutory adverse possession included a finding regarding the requirement of thirty years' assurance of title necessary for adverse possession under § 28-2-105. To the extent that the trial court omitted analysis of the assurance-of-title

---

[6] Within the argument section of their brief concerning adverse possession, Plaintiffs also assert that their fence was constructed in 2001. Although the existence of the fence does not affect our analysis of assurance of title under Tennessee Code Annotated § 28-2-105, we note also that the record does not indicate that Plaintiffs' fence encompassed the Disputed Portion.

requirement, however, we determine the error to be harmless because the record indicates that Plaintiffs did not present evidence of assurance of title for thirty years.

Assurance of title is also commonly known as "color of title," and the terms are "used interchangeably." *Cumulus*, 226 S.W.3d at 376. In defining assurance or color of title, this Court has explained:

> Assurance of title is "something in writing which at face value, professes to pass title but which does not do it, either for want of title in the person making it or from the defective mode of the conveyance that is used." *Cumulus*, 226 S.W.3d at 376 n.3 (quoting 10 THOMPSON ON REAL PROPERTY § 87.12, at 145). Deeds may serve as assurance of title, but they must contain a description of the disputed property. *See Lemm v. Adams*, 955 S.W.2d 70, 73 n.1 (Tenn. Ct. App. 1997) ("[P]ossession does not appear to have been under color of title because his deed did not contain a description of the disputed strip of property."); *Blankenship v. Blankenship*, 658 S.W.2d 125, 127 (Tenn. Ct. App. 1983) (finding no assurance of title because the deed introduced by the defendant did not appear to include the disputed acreage). In contrast, tax maps cannot be used to establish boundary lines or assurance of title. *State ex rel Summers v. Whetsell*, No. E2005-01426-COA-R3-CV, 2006 WL 1408403, at \*3 (Tenn. Ct. App. May 22, 2006); *see Cumulus*, 226 S.W.3d at 381.

*Summers v. Stubblefield*, No. M2014-00425-COA-R3-CV, 2015 WL 1275401, at \*6 (Tenn. Ct. App. Mar. 17, 2015).

Setting aside for a moment the question of whether Plaintiffs' deed to the Barrios Property included a description of the Disputed Portion, we begin with the essential question of whether Plaintiffs presented proof of a thirty-year chain of title to the Barrios Property. Plaintiffs' warranty deed is in the record as an attachment to the complaint filed in the prior lawsuit, which was presented as a trial exhibit in the instant action. The warranty deed indicated that the Barrios Property was conveyed to Plaintiffs on November 22, 2000, by Gerry Robinson and Retha Robinson, Plaintiffs' immediate predecessors in title, and was recorded by the Cheatham County Register shortly thereafter. The warranty deed further indicated that the property had been conveyed to the Robinsons via a deed executed by Gordon D. Shippy and Ardell U. Shippy on April 25, 1997, also recorded. However, the appellate record contains no indication of how or when the Shippys obtained their title.

Plaintiffs therefore presented proof of their chain of title spanning approximately seventeen years from the Shippys' acquisition of the property in 1997 to Plaintiffs' filing

of the complaint in 2014. Even assuming, *arguendo*, that Plaintiffs could have shown that the property description in their warranty deed and their predecessors' deeds included a description of the Disputed Portion, they still would have failed to establish assurance of title for thirty years. Moreover, Plaintiffs' expert surveyor, Mr. Suiter, testified that Plaintiffs' deed did not include the Disputed Portion in its property description, and Plaintiffs have not presented any argument to the contrary.

We determine that to the extent the trial court failed to consider Tennessee Code Annotated § 28-2-105 in its analysis of Plaintiffs' adverse possession claim, such omission was harmless error because the record clearly indicates that as a matter of law, Plaintiffs did not establish assurance of title to the Disputed Portion for thirty years. We discern no reversible error in the trial court's dismissal of Plaintiffs' adverse possession claim to the Disputed Portion. We therefore affirm the trial court's adoption of the Suiter Survey as the boundary line between the parties' properties.

## V. Plaintiffs' Trespass Claim

Plaintiffs allege that Defendants trespassed by mowing, cutting trees, "toss[ing] rocks," "plac[ing] fires," and "plac[ing] themselves" on the Barrios Property. Plaintiffs contend that the trial court erred by dismissing their trespass claim upon the court's finding that Defendants did not intend to trespass onto the disputed property because they believed it to be theirs. Plaintiffs posit that as a matter of law, the tort of trespass does not require an intent to trespass but solely an intent to commit the act of entry onto the disputed property. Defendants acknowledge that an intent to trespass is not a required element of the tort, and we agree with the parties on this point. *See Twenty Holdings, LLC v. Land S. TN, LLC*, No. M2018-01903-COA-R3-CV, 2019 WL 4200970, at *8 (Tenn. Ct. App. Sept. 5, 2019) ("The intent element of civil trespass only requires proof that the tortfeasor intentionally entered or remained, or caused a third party or thing to enter or remain, upon the property of another regardless of the tortfeasor's knowledge, lack of knowledge, or good faith mistake as to actual property ownership or right." (quoting Trespass, *Plaintiff's Proof Prima Facie Case* § 14:24)).

Defendants contend, however, that the trial court properly dismissed Plaintiffs' trespass claim upon finding that Plaintiffs "were unable to prove by a preponderance of the evidence that [Defendants] actually entered onto [Plaintiffs'] land." In support of this contention, Defendants cite the trial court's final order wherein the court concluded in pertinent part:

Based upon the suit filed, each party thought they were lawfully on their own real property. Since there was a dispute as to the rightful owner of the property, there could not be a wrongful entry on another's real

17

property.  Based upon the evidence presented, neither party proved by a preponderance of the evidence that the other party trespassed upon their property.  Therefore, both Plaintiffs' and Defendants' claims for trespass are dismissed with prejudice.

(Emphasis added.)  Although the trial court did conclude that neither Plaintiffs nor Defendants proved trespass, the court's reasoning appears to have been, as Plaintiffs note, that neither set of parties could prove trespass because all parties believed that they were "lawfully on their own real property" and that therefore no "wrongful entry" of that property was possible.  We disagree with the trial court's reasoning in this regard.

In contrast, this Court has previously stated that "[i]n a case involving trespass, the defendant's intent to trespass or knowledge that he is trespassing is immaterial." *City of Townsend v. Damico*, No. E2013-01778-COA-R3-CV, 2014 WL 2194453, at *3 (Tenn. Ct. App. May 27, 2014).  This Court has further clarified that despite the "intentional nature" of the act of trespass, "specific intent is not required." *Twenty Holdings*, 2019 WL 4200970, at *8.  The *Twenty Holdings* Court quoted with approval the following treatise explanation of the intent required for the tort of trespass:

A trespass to real property requires the intentional entry onto the land of another.  A trespass to real property is characterized as an intentional tort, regardless of the actor's motivation.  Trespass to realty is an intentional tort in the sense that it involves the intent to commit an act that violates a property right, or would be practically certain to have that effect, although the actor may not know the act he or she intends to commit is such a violation.  Liability for a trespass upon real property produced by a voluntary act need not be grounded in negligence, so long as the act causing the trespass was intended.

In the context of a trespass, "intent" refers to intent to be on the land.  Trespass to real property does not require proof that a person entered property with the intent to commit trespass.  While a trespass clearly occurs when the actor knowingly and without authority enters the land of another, the requisite intention is to enter upon the particular land in question, irrespective of whether the actor knows or should know that he or she is not entitled to enter.  The only relevant intent is that of the actor to enter the real property, and the actor's subjective intent or awareness of the property's ownership is irrelevant.  It is not necessary that one act for the purpose of entering; it is enough that the actor knows that the conduct will result in such an entry, inevitably or to a substantial certainty.

18

It is only necessary that the actor intentionally be upon any part of the land in question. It is not necessary that one intend to invade the possessor's interest in the exclusive possession of the land or take possession and, therefore, know that the entry is an intrusion. Thus, an intent to be at the place where the trespass allegedly occurred is sufficient to show an intentional entry, even though the defendant acted in good faith, and under the mistaken belief, however reasonable, that he or she was not committing a wrong. Thus, entering upon the land of another without permission, even if innocently or by mistake, constitutes trespass. The defendant need not have contemplated any damage to the plaintiff resulting from the intentional entry. It is also immaterial whether that person honestly and reasonably believes that the land is one's own, or that he or she has the consent of the possessor or of a third person having the power to give consent, or a mistaken belief that one has some privilege to enter, or right to be on the land.

*Id.* at \*8-9 (emphasis added) (quoting 75 Am. Jur. 2d *Trespass* § 23) (footnotes omitted in *Twenty Holdings*).

Accordingly, any instances of Defendants' entering, without authorization, onto the land located between the Chandler Survey boundary line ("Chandler Boundary"), which Defendants believed to be their property line, and the Suiter Survey boundary line ("Suiter Boundary"), which the trial court found to be the actual property line, constituted trespass despite any lack of intent to trespass on Defendants' part. Inasmuch as the trial court dismissed Plaintiffs' trespass claim upon finding no intent on Defendants' part to trespass, the court did not make any specific findings of fact concerning whether Defendants had entered onto the Barrios Property between the Chandler Boundary and Suiter Boundary. We therefore vacate the trial court's dismissal of Plaintiffs' trespass claim and remand for the trial court to apply the proper intent standard, with the Suiter Boundary established as the parties' boundary line, to determine whether Defendants committed civil trespass onto Plaintiffs' property.

## VI. Damages

Plaintiffs contend that the trial court erred by declining to award at least nominal damages and costs against Defendants for trespass. Plaintiffs also argue that the trial court erred by declining to award compensatory and punitive damages they requested in the amount of $250,000, plus medical expenses arising from Ms. Barrios's treatment in the emergency room following the alleged assault. Maintaining that the trial court properly dismissed Plaintiffs' trespass claim, Defendants assert that the trial court properly declined to award damages.

Generally, the measure of compensatory damages available for trespass is "the cost of restoring the property to its condition prior to the injury or, alternatively, the diminution in market value." *Magness v. Couser*, No. M2006-00872-COA-R3-CV, 2008 WL 204116, at *8 (Tenn. Ct. App. Jan. 24, 2008) (citing *Conaster v. Ball,* No. M1999-00583-COA-R3-CV, 2001 WL 873457 at *9 (Tenn. Ct. App. Aug. 3, 2001)). As the *Magness* Court stated in the context of trespass, "[d]amages may also be awarded for other types of harm, including the value of the trespasser's use and mental suffering." *See Magness*, 2008 WL 204116, at *8. As this Court has further explained:

> In trespass actions, the plaintiff must prove the value of the property taken or special damages sustained by him in consequence of the trespass. *Lay v. Bayless*, 44 Tenn. (4 Cald.) 246 (1867). <u>However, a trespass entitles the property owner to at least nominal damages</u> plus all consequential damages. *Schumpert v. Moore*, 24 Tenn. App. 695, 149 S.W.2d 471 (1940); *Price v. Osborne*, 24 Tenn. App. 525, 147 S.W.2d 412 (1940).

*Gottschall v. Fenn*, 1986 WL 655, at *2 (Tenn. Ct. App. Jan. 7, 1986) (emphasis added). In awarding nominal damages in *Gottschall* for the trespass of an encroachment that was removed prior to trial with no damages proven, this Court also awarded costs, noting that "an award of nominal damages entitles the plaintiffs to a judgment for costs." *Id.* at *2 (citing *Seat & Robinson v. Moreland*, 26 Tenn. 575, 576 (1847)).

Having vacated the trial court's dismissal of Plaintiffs' trespass claim and remanded for application of the proper intent standard, we also remand for the trial court to, if it finds that trespass has occurred, determine what type(s) of damages should be awarded and set the amount of damages to be awarded with discretionary costs if appropriate.

## VII. Injunctive Relief

Plaintiffs also contend that the trial court erred in failing to grant them injunctive relief against Defendants. Plaintiffs argue that "[n]o other remedy is adequate" because "[t]his ongoing feud will only end when [Defendants] are ordered not to place themselves or objects under their control onto [Plaintiffs'] property." Defendants posit that no injunction is necessary because now that the boundary line has been declared, Plaintiffs would already have legal remedies available if Defendants were to trespass over the established boundary line. *See State v. Christensen*, 517 S.W.3d 60, 76 (Tenn. 2017) ("In short, a homeowner who posts a 'No Trespassing' sign is simply making explicit what the law already recognizes: that persons entering onto another person's land must have a legitimate reason for doing so or risk being held civilly, or perhaps even criminally, liable

for trespass."). The trial court, however, having dismissed all claims, did not address Plaintiffs' request for injunctive relief in its final order. We therefore direct that on remand, the trial court shall determine whether Plaintiffs' request for injunctive relief should be granted and enter findings of fact and conclusions of law explaining its decision to grant or deny the request.

Regarding the grant or denial of injunctive relief, this Court has explained:

[W]e review the issuance or nonissuance of an injunction by the trial court under an abuse of discretion standard. When a trial court decides to grant an injunction, several factors are to be considered such as the danger of irreparable harm, the inadequacy of other remedies, the benefit to the plaintiff, the harm to the defendant, and the public interest.

*Zion Hill Baptist Church v. Taylor*, No. M2002-03105-COA-R3-CV, 2004 WL 239760, at *5 (Tenn. Ct. App. Feb. 9, 2004) (internal citations omitted). In *Zion Hill*, an easement dispute, the trial court found that an easement existed over the plaintiff's land. *Id.* at *1. However, the trial court did not issue the defendants' requested injunctive relief and did not make any findings of fact concerning the factors noted above. *Id.* at *5. Determining also that "nothing in the record indicate[d] that the trial court considered" the issue of injunctive relief, this Court remanded to the trial court for findings of fact on the requested injunction. *Id.*; *see Humphries v. Minibiole*, No. M2011-00008-COA-R3-CV, 2012 WL 5466085, at *6 (Tenn. Ct. App. Nov. 8, 2012) (vacating the injunction issued by the trial court upon determining that the trial court had not made findings regarding the relevant factors and remanding for the court "to consider the relevant factors meant to guide its discretionary determination").

In the instant action, the trial court, having found that no trespass had occurred, did not expressly consider Plaintiffs' request for injunctive relief and so did not consider the applicable factors. Having vacated the trial court's dismissal of Plaintiffs' trespass claim and having remanded that claim for application of the proper intent standard, we also remand for the trial court to enter an order granting or denying Plaintiffs' request for injunctive relief, including findings of fact regarding any of the relevant factors. *See Zion Hill*, 2004 WL 239760, at *5.

VIII. Attorney's Fees on Appeal

A. Plaintiffs' Request for Attorney's Fees on Appeal

Plaintiffs' request for attorney's fees on appeal is supported in the argument section of their principal brief by one sentence, together with a citation, conceding that

the decision of whether to award attorney's fees is in this Court's sound discretion. *See Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010) ("An award of appellate attorney's fees is a matter within this Court's sound discretion."). Plaintiffs offer no rationale for an award of attorney's fees on appeal.

Tennessee Rule of Appellate Procedure 27 sets forth the content of briefs submitted on appeal. Concerning the requirements of argument development and citations to authority set forth in Rule 27(a)(7), this Court has explained:

> This court has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.").

*Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011).

Consequently, we deem Plaintiffs' request for an award of attorney's fees on appeal to be waived for failure to construct an argument. Moreover, we note that "[a]ttorney's fees are not recoverable for trespass actions." *Perlacky v. Chapin*, No. E2017-01995-COA-R3-CV, 2018 WL 3603004, at *3 (Tenn. Ct. App. July 27, 2018) (citing *Caldwell v. Canada Trace, Inc.*, No. W2007-00783-COA-R3-CV, 2008 WL 2901343, at *2 (Tenn. Ct. App. 2008); *Gottschall*, 1986 WL 655, at *6).

### B. Defendants' Request for Attorney's Fees on Appeal

In the argument section of their responsive brief on appeal, Defendants have included a section entitled, "Appellants' Appeal is Frivolous," wherein they request that this Court award attorney's fees as damages for defending against a frivolous appeal pursuant to Tennessee Code Annotated § 27-1-122 (2017). Although Defendants have included this section title in their table of contents, they have not included a separate statement of the issues in their brief and have not therefore raised attorney's fees on appeal in a statement of the issues. As our Supreme Court has explained:

> Appellate review is generally limited to the issues that have been presented for review. Tenn. R. App. P. 13(b); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007). Accordingly, the Advisory Commission on the

Rules of Practice and Procedure has emphasized that briefs should "be oriented toward a statement of the issues presented in a case and the arguments in support thereof." Tenn. R. App. P. 27, advisory comm'n cmt.

*Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012); *see also Forbess*, 370 S.W.3d at 356 ("We may consider an issue waived where it is argued in the brief but not designated as an issue."). Therefore, we also deem Defendants' request for attorney's fees on appeal to be waived.

IX. Conclusion

For the foregoing reasons, we vacate the trial court's dismissal of Plaintiffs' trespass claim and remand for the trial court to (1) apply the proper intent standard, with the Suiter Boundary established as the parties' boundary line, to determine whether Defendants committed civil trespass onto Plaintiffs' property; (2) if trespass occurred, determine the type(s) of damages to be awarded; and (3) if trespass occurred, set the amount of damages to be awarded with discretionary costs as appropriate.[7] We also remand this case to the trial court for consideration of Plaintiffs' request for injunctive relief based on relevant factors and entry of an order granting or denying injunctive relief with appropriate findings of fact. The trial court's order is affirmed in all other respects, including the trial court's declaration of the parties' boundary line. We further remand this case for enforcement of the judgment and collection of costs below. We deem Plaintiffs' and Defendants' respective requests for attorney's fees on appeal to be waived. Costs on appeal are taxed one-half to the appellants, Toni Barrios and Louis Barrios, and one-half to the appellees, Charlie Simpkins and Jackie Simpkins.

s/ Thomas R. Frierson, II
THOMAS R. FRIERSON, II, JUDGE

---

[7] We note that the trial court judge, Kelvin D. Jones, is no longer serving on the bench. On remand, this case shall be heard by a successor judge in accordance with Tennessee Rule of Civil Procedure 63, which provides:

> If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a trial or hearing without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. In any trial or hearing, with or without a jury, the successor judge may recall any witness.